RENDERED: JULY 31, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0925-MR

COMMONWEALTH OF KENTUCKY               APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM FRANKLIN CIRCUIT COURT<br>HONORABLE THOMAS D. WINGATE, JUDGE<br>ACTION NOS. 24-CI-00354 & 20-CI-00590 |

CAVANAUGH MACDONALD
CONSULTING, LLC; ALISA
BENNETT; BLACKSTONE ALT
ASSET MANAGEMENT, L.P.;
BOBBIE HENSON; BRENT
ALDRIDGE; DAVID PEDEN;
GEORGE ROBERTS; GIRISH
REDDY; HENRY KRAVIS; J.
THOMLINSON HILL; JANE
BUCHAN; JENNIFER ELLIOTT; JIM
VOYTKO; KKR & CO INC.,
FORMERLY KNOWN AS KKR &
CO.; PACIFIC ALTERNATIVE ASSET
MANAGEMENT COMPANY, LLC;
PRISMA CAPITAL PARTNERS LP;
R.V. KUHNS & ASSOCIATES, INC.;
RANDY OVERSTREET; REBECCA
A. GRATSINGER; STEVEN A.
SCHWARZMAN; T.J. CARLSON;
THE BLACKSTONE GROUP, INC.
FKA BLACKSTONE ALTERNATIVE
ASSET MANAGEMENT, L.P.;
THOMAS CAVANAUGH; THOMAS

ELLIOTT; TIMOTHY LONGMEYER;
TODD GREEN; VINCE LANG;
WILLIAM A. THIELEN; AND
WILLIAM COOK                                                    APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND ECKERLE, JUDGES.

CALDWELL, JUDGE:  The Commonwealth of Kentucky ("the Commonwealth") appeals from the dismissal of its claims against two entities that had provided investment or actuarial services for the Kentucky Retirement System ("Retirement").[1]  Specifically, the Commonwealth's claims at issue in this appeal were brought against:  1) R.V. Kuhns & Associates, Jim Voytko, and Rebecca Gatsinger (collectively "RVK"), who provided investment advice to Retirement from about 2008 to 2017; and 2) Cavanaugh Macdonald Consulting, LLC, Thomas Cavanaugh, Todd Green, and Alisa Bennett (collectively "CavMac"), who performed actuarial services for Retirement from about 2006 to 2016.  The Franklin Circuit Court concluded the Commonwealth's claims against both appellees were untimely.  We affirm in part, reverse in part, and remand.

---

[1] For convenience's sake, we shall refer to that entity as simply Retirement, even though its name was changed to the Kentucky Public Pensions Authority during this lengthy litigation.

# FACTUAL AND PROCEDURAL HISTORY

This is the latest iteration in a series of appeals involving allegations of misconduct surrounding Retirement's funding crisis. The underlying procedural history is lengthy, and the trial court record is gargantuan. We have closely examined the parties' well-written, comprehensive briefs but will streamline the case's complex underlying factual and procedural history. Also, "[w]e have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

In 2017, a group of public employees, commonly referred to as the *Mayberry* plaintiffs, sued trustees and officers of Retirement as well as "third parties who did business with [Retirement], including actuarial and investment advisors, hedge-fund sellers, and their executives." *Overstreet v. Mayberry*, 603 S.W.3d 244, 250 (Ky. 2020). The gist of the *Mayberry* plaintiffs' claims was that "between 2011 and 2016 Defendants knew that [Retirement] faced an appreciable risk of running out of plan assets but concealed the true state of affairs" and improperly convinced Retirement to "'recklessly gamble' [its] way out of the actuarial shortfall by investing $1.5 billion of . . . [its] assets in high-risk 'fund-of-hedge-fund' products offered by the defendant hedge-fund sellers." *Id.*

Relevant here, the *Mayberry* plaintiffs "asserted claims for breach of fiduciary duties against the advisors and hedge-fund sellers and their principals as well as claims for aiding and abetting the breaches of the trustees and officers. And Plaintiffs brought a claim against all Defendants for engaging in a joint enterprise or civil conspiracy to breach fiduciary duties." *Id.*

The *Mayberry* plaintiffs "provided the Attorney General an advance copy of their complaint before filing, but he declined to join the suit." *Id.* at 251. Ultimately, our Supreme Court ruled that the *Mayberry* plaintiffs lacked standing. *Id.* at 266. Thus, our Supreme Court remanded the case to the Franklin Circuit Court with specific instructions to "dismiss the complaint." *Id.*

However, in July 2020, the same month *Mayberry* was issued, the Commonwealth, via the Attorney General of Kentucky, intervened as a plaintiff in *Mayberry*.[2] The Commonwealth also filed a standalone action which intentionally mimicked the *Mayberry* plaintiffs' claims. The Trial Court eventually dismissed the original *Mayberry* action and so the proceedings relevant here have primarily occurred in the standalone action with the Commonwealth as the sole plaintiff.

The Commonwealth named numerous defendants, but CavMac and RVK are the only ones relevant to this appeal. The Commonwealth's claims

---

[2] The Attorney General in 2020 was different than the Attorney General who had declined to join the *Mayberry* complaint.

against CavMac and RVK were for breach of fiduciary duty, civil conspiracy, aiding and abetting breach of fiduciary duty, and aiding and abetting breach of trust. In 2023, CavMac and RVK filed motions to dismiss the Commonwealth's claims against them. *See* CR[3] 12.02. The crux of the motions was CavMac's and RVK's assertion that the Commonwealth's claims were untimely filed. Over the Commonwealth's vigorous dissent, the trial court dismissed all of the Commonwealth's claims against RVK and CavMac on timeliness grounds.

First, the trial court found that the applicable statute of limitations for the claims against RVK is the one-year limitations period in KRS[4] 413.245 for providing "professional services for others" because, in the trial court's view, "[i]nvestment advising is a 'profession' under the statute."[5] Trial Court Record

---

[3] Kentucky Rules of Civil Procedure.

[4] Kentucky Revised Statutes.

[5] KRS 413.245 provides in relevant part:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable . . . a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured.

KRS 413.243 somewhat circularly provides "[a]s used in KRS 413.245, 'professional services' means any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky, except those professions governed by KRS 413.140." Neither investment advisors nor actuaries are explicitly listed in KRS 413.140.

("R.") at 3553. The court deemed the claims against RVK untimely because "RVK's contract with [Retirement] terminated in 2017, and all of the allegations against RVK concern public events, with the most recent mention of RVK concerning the 2015 Annual Report [issued by Retirement]." *Id.*

Second, the court did not definitively find whether KRS 413.245 applied to the claims against CavMac. Instead, the court held that "[e]ven giving the Commonwealth the most generous [five-year] statute of limitations, the claims against CavMac started to run, at the latest, on July 21, 2010 when the highest authority for [Retirement] had actual knowledge of all relevant facts." R. at 3554. Thus, in the court's view, the Commonwealth's 2020 complaint was filed too late.

The court did not address the Commonwealth's assertion that its claims relate back to when the *Mayberry* plaintiffs filed their complaint in 2017. The court also did not address the Commonwealth's argument that there is a ten-year statute of limitation for its aiding and abetting breach of trust claims. The trial court denied the Commonwealth's motion to alter, amend, or vacate, after which the Commonwealth filed this appeal which involves only CavMac and RVK. Thus, the Commonwealth's claims against other defendants are not before us.

# ANALYSIS

Our review is limited to determining whether the Commonwealth's claims against CavMac and RVK are facially barred by the applicable statute of limitations. We express no opinion on the merits of the Commonwealth's claims.

## STANDARDS OF REVIEW

In Kentucky, "where the complaint shows upon its face that it is barred by limitation the question may be reached by motion to dismiss." *Tomlinson v. Siehl*, 459 S.W.2d 166, 167 (Ky. 1970). However, if "there is a factual issue upon which the application of the statute depends, it is proper to submit the question to the jury." *Lynn Min. Co. v. Kelly*, 394 S.W.2d 755, 759 (Ky. 1965).

Our Supreme Court has explained the standards governing motions to dismiss for failure to state a claim upon which relief may be granted under CR 12.02(f) as follows:

> A motion to dismiss for failure to state a claim upon which relief may be granted admits as true the material facts of the complaint. So a court should not grant such a motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . . Accordingly, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. This exacting standard of review eliminates any need by the trial court to make findings of fact; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be

> proved, would the plaintiff be entitled to relief?  Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks, footnotes, and citations omitted) (ellipsis in *Fox*).[6]

In short, a "complaint should not be dismissed unless it appears **to a certainty** that [the] plaintiff would not be entitled to relief under any statement of facts which could be proved in support of the claim."  *Seiller Waterman, LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 195 (Ky. 2020) (internal quotation marks and citation omitted) (emphasis added) (brackets in *Seiller Waterman, LLC*). Determining if "an action is barred by the statute of limitations is a question of law" which we review *de novo*.  *Ragland v. DiGiuro*, 352 S.W.3d 908, 912 (Ky. App. 2010) (internal quotation marks and citations omitted).

### KRS 413.245

The main initial dispute in the parties' briefs, especially between RVK and the Commonwealth, is whether the Commonwealth's claims are time-barred under the one-year statute of limitations in KRS 413.245 for providing professional services.  The parties have not cited, nor did we independently locate, Kentucky

---

[6] No party asserts the motions to dismiss were converted to motions for summary judgment due to presentation of "matters outside the pleading . . . ."  *See* CR 12.02.

precedent addressing whether claims against investment advisors or actuaries fall within the scope of KRS 413.245.

In common parlance, both investment advisors and actuaries may typically be thought of as professionals. However, KRS 413.245 applies only to claims for providing "professional services" and the General Assembly has provided a statutory definition for the term *professional services* in KRS 413.243: "any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky, except those professions governed by KRS 413.140." Thus, as it pertains here, for an occupation to statutorily qualify as a *profession* which provides *professional services*, the occupation must be one which Kentucky requires to be licensed.

We may readily conclude that actuaries are not professionals under KRS 413.245. CavMac admits on page 26 of his brief that "actuaries are not required to be licensed in Kentucky generally . . . ." Therefore, actuaries cannot provide *professional services* under the definition thereof in KRS 413.243. So, the claims against CavMac, which involved CavMac's providing actuarial services to Retirement, cannot be governed by KRS 413.245.[7]

---

[7] Though not binding here, and not cited by the parties, we note that a New York appellate court similarly held that the lack of a licensing requirement meant actuaries were not professionals under the New York statute of limitations applicable to claims against professionals. *See Castle Oil Corp. v. Thompson Pension Employee Plans, Inc.*, 299 A.D.2d 513, 514, 750 N.Y.S.2d 629, 631 (N.Y. App. Div. 2002).

The statute also does not apply to RVK. RVK peculiarly asserts that the Commonwealth "does not contest that the profession of investment consulting to public pensions is licensed, administered and regulated as a profession in the Commonwealth. . . ." RVK Brief, p. 13 (internal quotation marks and citation omitted). On the contrary, the Commonwealth vehemently insists that investment advisors such as RVK are not professionals for purposes of KRS 413.245.

Investment advisors in Kentucky are generally required to be registered.[8] *See* KRS 292.330. There are also federal registration requirements. *See, e.g.*, 15 U.S.C.[9] § 80b-3. However, the parties have not pointed to (nor did we independently locate) Kentucky law requiring investment advisors to be *licensed*.

There is an unmistakable distinction in the law between being registered and being licensed. *Register* means "[t]o enter in a public registry" or "[t]o enroll formally" or "[t]o make a record of[.]" *Register*, BLACK'S LAW DICTIONARY (12th ed. 2024). *License* means "[a] privilege granted by a state . . . upon the payment of a fee, the recipient of the privilege then being authorized to do some act or series of acts that would otherwise be impermissible." *License*,

---

[8] There are exceptions to the registration requirement for investment advisers in KRS 292.330(9). In fact, RVK admits "it is exempt from registration in Kentucky because it has no office and serves fewer than five clients here." RVK Brief, p. 13 n.8. Nonetheless, the focus must be on whether the occupation as a whole qualifies as a *profession*, not on the individual member of that occupation. *See, e.g.*, *Abel v. Austin*, 411 S.W.3d 728, 738-39 (Ky. 2013) (holding that KRS 413.245 applied to claims against Kentucky and out of state attorneys).

[9] United States Code.

BLACK'S LAW DICTIONARY (12th ed. 2024).  As it pertains here, the holder of a license thus has formal governmental approval to engage in an occupation whereas a person who is registered only has formally notified the government that he or she is engaging in an occupation.  In short, we reject the argument that an investment advisor (or actuary) is licensed in Kentucky simply because that profession is required to be registered in Kentucky.  The terms are not interchangeable.

"Our General Assembly speaks through statute, and this Court must always assume that the General Assembly means what it says and attempt to give effect to that meaning."  *Exantus v. Commonwealth*, 612 S.W.3d 871, 886 (Ky. 2020).  In so doing, "[w]e cannot add or subtract from the language used in a statute[,]" *Commonwealth, Department of Revenue, Finance and Administration Cabinet v. McDonald*, 304 S.W.3d 62, 65 (Ky. App. 2009), and must "presume every word within a statute to have some meaning."  *Travelers Indemnity Company v. Armstrong*, 565 S.W.3d 550, 563 (Ky. 2018).  The words in a statute "are decisive if they are clear."  *Gateway Const. Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky. 1962).

KRS 413.243 is clear:  to qualify as providing *professional services*, an occupation must be in "a profession required to be licensed" in Kentucky.  Thus, to honor the specific language chosen by the General Assembly we must reject RVK's argument that being *registered* in Kentucky satisfies the requirement

to be *licensed* in Kentucky. Because investment advisors are not required to be licensed in Kentucky, they cannot provide professional services under KRS 413.245.[10]

The trial court's improper application of KRS 413.245 was the entire basis for dismissing the Commonwealth's claims against RVK. However, we will examine whether the Commonwealth's claims against RVK (and CavMac) are untimely under the proper statute(s) of limitation since the Commonwealth asserts that its claims are timely under the application of the proper statutes of limitation. To determine each claim's timeliness, we must first determine which statute of limitations applies to each of the Commonwealth's claims. Thereafter, we shall examine whether the claims are untimely "to a certainty . . . ." *Seiller Waterman, LLC*, 610 S.W.3d at 195 (internal quotation marks and citation omitted).

### Statutes of Limitations for Each Claim

#### 1. Civil Conspiracy

We begin with the Commonwealth's civil conspiracy claims. KRS 413.140(1)(c) expressly provides a one-year limitations period for civil conspiracy

---

[10] Again, though not cited by the parties and not binding, our holding generally aligns with the conclusion reached by an appellate court in New York. *See Brooks v. AXA Advisors, LLC*, 104 A.D.3d 1178, 1180, 961 N.Y.S.2d 648 (N.Y. App. Div. 2013). Also, as with actuaries, the fact that investment advisors are not required to be licensed in Kentucky means they cannot be professionals and so we do not need to address the Commonwealth's alternate argument that financial advisors also do not have the mandatory advanced education and training requirements required to be professionals. *See, e.g., Plaza Bottle Shop, Inc. v. Al Torstrick Ins. Agency, Inc.*, 712 S.W.2d 349, 351 (Ky. App. 1986).

-12-

claims.  Longstanding Kentucky precedent holds, generally, that one-year period "does not commence to run until the last overt act performed in compliance with the objective of the conspiracy has been accomplished."  *District Union Local 227, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO v. Fleischaker*, 384 S.W.2d 68, 72 (Ky. 1964).

## 2.  Breach of Fiduciary Duty and Aiding and Abetting a Breach of Fiduciary Duty

Claims for breach of fiduciary duty are subject to a five-year limitations period.  *Middleton v. Sampey*, 522 S.W.3d 875, 878 (Ky. App. 2017).  Those claims are not subject to the discovery rule, *id.* at 879, and instead "accrue upon the commission of the breach."  *Ferrill v. Stock Yards Bank and Tr. Company*, 671 S.W.3d 339, 346 (Ky. 2023).  The parties accept, as do we, that claims for aiding and abetting the breach of a fiduciary duty are subject to the same limitations period as claims for breach of fiduciary duty.  *See, e.g.*, *Anderson v. Pine South Capital, LLC*, 177 F. Supp. 2d 591, 604 (W.D. Ky. 2001).[11]

---

[11] We once held that "Kentucky law has never recognized a civil cause of action for aiding and abetting a breach of fiduciary duty."  *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255, 260 (Ky. App. 2008).  However, we later recognized the existence of such a claim (and even set forth its elements) in *Insight Kentucky Partners II, L.P. v. Preferred Automotive Services, Inc.*, 514 S.W.3d 537, 546 (Ky. App. 2016).

### 3. Aiding and Abetting Breach of Trust

The Commonwealth's final claim is for aiding and abetting a breach of trust. The parties vigorously dispute whether there is a five-year or ten-year statute of limitations for that claim.

The disagreement revolves around the impact of statutory changes made by the General Assembly in 2014 and 2015. KRS 413.120(6) formerly provided a five-year statute of limitations for "[a]n action for an injury by a trustee to the rights of a beneficiary of a trust." But the General Assembly deleted that provision in 2015. *See* 2015 Kentucky Laws Ch. 121, § 3 (HB 104).

The General Assembly adopted the Uniform Trust Code in 2014, which is codified in KRS Chapter 386B. Within that Code, KRS 386B.10-050(4), enacted in 2015, provides that, with an exception inapplicable here, "a judicial proceeding by a beneficiary against a trustee for breach of trust shall be commenced within five (5) years of discovery of an injury by a trustee to the rights of the beneficiary." However, KRS 386B.1-010(19)(b), enacted in 2014, provides that under KRS Chapter 386B a *trust* "does not include . . . a trust for the primary purpose of paying . . . pensions or profits, or employee benefits of any kind . . . ."[12]

---

[12] The 2026 amendments to KRS 386B.1-010 did not impact the definition of *trust* at issue here, though the definition was moved from subsection 19(b) to subsection 20(b). *See* 2026 Kentucky Laws Ch. 134, § 116 (SB 50).

In the Commonwealth's view, the statute of limitations for its aiding and abetting breach of trust claims is thus ten years because "the General Assembly repealed the specific statute of limitations for breach-of-trust claims in 2015, thus subjecting those claims to the ten-year catch-all limitations period" in KRS 413.160.  Commonwealth Reply Brief, p. 5.  In relevant part, KRS 413.160 provides that "an action for relief not provided for by statute can only be commenced within ten (10) years after the cause of action accrued."  CavMac asserts the Commonwealth's argument "makes no sense" and the "aiding and abetting breach of trust claim is subject to the same five-year limitations period applicable to breach of fiduciary duty claims under the current KRS 413.120(6)."  CavMac Brief, p. 18.  RVK essentially agrees with CavMac.

The parties have not cited, nor have we independently located, precedent resolving the post-2015 statute of limitations for claims alleging the aiding and abetting of a breach of pension-based trust.

The General Assembly plainly exempted claims involving breach of pension-based trusts from the Uniform Trust Code since such trusts are explicitly excluded from the definition of *trust* in KRS 386B.1-010(19)(b).  Moreover, the General Assembly must have intended to change the law when it deleted language from the former KRS 413.120(6) providing a five-year statute of limitations for breach of trust claims.  *See, e.g.*, *City of Fort Wright v. Board of Trustees of*

-15-

*Kentucky Retirement Systems*, 635 S.W.3d 37, 44-45 (Ky. 2021) (explaining that there is a "presumption that legislative amendments have purpose, namely to effect a change in the law" and there is a "specific presumption that the omission of a clause means the omitted clause should no longer be the law") (internal quotation marks and citations omitted).

The General Assembly's intent regarding the proper statute of limitations for claims involving alleged aiding and abetting breaches of pension-oriented trusts is not plain. However, what is plain is that the Commonwealth's aiding and abetting breach of trust claims no longer fit obviously and directly within any specific statute of limitations.

The claims are specifically exempted from the Uniform Trust Code. The former statute of limitations in KRS 413.120(6) has long since been deleted. The facial lack of a specific applicable statute of limitations for these claims means there are seemingly only two potential limitations options: the catchall, ten-year limitation period in 413.160 for "any type of action not otherwise provided for by statute," Ronald W. Eades, *Kentucky Law of Damages* § 12:16 (Feb. 2026 Update), or the five-year period in KRS 413.120(6) for actions "for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated."[13]

---

[13] Though both CavMac and RVK had a contractual relationship with Retirement, and Retirement is an arm of the Commonwealth, RVK and CavMac assert that KRS 413.120(6) applies even though that subsection is applicable to claims "not arising on contract . . . ." *See*

To *enumerate* means "[t]o count off or designate one by one; to list." *Enumerate*, BLACK'S LAW DICTIONARY (12th ed. 2024). And a legal dictionary defines an *enumerated right* as "[a]n express right embodied in writing, as in statutes and caselaw." *Right*, BLACK'S LAW DICTIONARY (12th ed. 2024). The claims at hand are not "otherwise enumerated" by other statutes since they are exempt from the Uniform Trust Code and the parties do not provide any other express statutory statute of limitations for these claims. Thus, the unenumerated claims arguably fall within the language of KRS 413.120(6).

On the other hand, the claims also arguably fall within the catchall language of KRS 413.160 for claims "not provided for by statute . . . ." In short, the five-year limitations period in KRS 413.120(6) and the ten-year limitations period in KRS 413.160 are each arguably applicable.

Longstanding Kentucky precedent resolves this dilemma. Specifically, almost 40 years ago, our Supreme Court held that "because statutes of limitation are in derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable." *Troxell v. Trammell*, 730 S.W.2d 525, 528 (Ky. 1987). Accordingly, the longer, ten-year

---

CavMac Brief, p. 18 ("Thus, the Commonwealth's aiding and abetting breach of trust claim is subject to the same five-year limitations period applicable to breach of fiduciary duty claims under current KRS 413.120(6)."); RVK Brief, p. 17 ("The breach of trust claim is an action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated, so the five-year statute in KRS 413.120(6) would apply.") (internal quotation marks, bracket, and citation omitted).

statute of limitations in KRS 413.160 applies to these idiosyncratic aiding and abetting a breach of a pension-focused trust claims.

## KRS 413.270

Having determined the applicable statute of limitations for each claim, we now turn to the Commonwealth's argument that its claims all relate back to the 2017 filing of the *Mayberry* plaintiffs' complaint via application of KRS 413.270, commonly referred to as Kentucky's Savings Statute. KRS 413.270(1), which has not been amended since 1958, provides:

> If an action is commenced in due time and in good faith in any court of this state and the defendants or any of them make defense, and it is adjudged that the court has no jurisdiction of the action, the plaintiff or his representative may, within ninety (90) days from the time of that judgment, commence a new action in the proper court. The time between the commencement of the first and last action shall not be counted in applying any statute of limitation.

The Commonwealth asserts that statute applies since it filed its initial complaint within 90 days of *Mayberry* being final, *Mayberry* was dismissed for lack of jurisdiction, and it is the representative of the *Mayberry* plaintiffs. CavMac and RVK vigorously disagree.

The Commonwealth filed its first complaint within 90 days of when *Mayberry* became final. And, despite Appellees' arguments to the contrary, the

-18-

Commonwealth satisfies the "no jurisdiction" requirement since *Mayberry* was dismissed on jurisdictional grounds.

Our Supreme Court ordered the complaint in *Mayberry* to be dismissed because the plaintiffs therein lacked constitutional standing, *Mayberry*, 603 S.W.3d at 266, and when "a plaintiff fails to establish constitutional standing, the case should be dismissed for lack of subject-matter jurisdiction." *City of Pikeville v. Kentucky Concealed Carry Coalition, Inc.*, 671 S.W.3d 258, 264 (Ky. 2023). Jurisdiction is a broad term involving related, but distinct concepts. *See, e.g.*, *Hisle v. Lexington-Fayette Urban Cnty. Government*, 258 S.W.3d 422, 429 (Ky. App. 2008). Since the General Assembly did not specify any particular type of "no jurisdiction" in KRS 413.270(1), we must conclude the legislature intended the statute to apply to dismissal for all jurisdictional defects since "[w]e are not permitted to add words to a statute, and a legislature making no exceptions to the positive terms of a statute is presumed to have intended to make none." *Louisville/Jefferson Cnty. Metropolitan Government v. Moore*, 701 S.W.3d 335, 345 (Ky. 2024) (internal quotation marks and citations omitted).

Nonetheless, we must reject the Commonwealth's relation back argument. As a general legal principle, "[t]he plaintiff must be the same in both actions" for a later action to fall within a savings statute. 54 C.J.S. *Limitations of Actions* § 353 (April 2026 Update). Although factually distinguishable,

-19-

longstanding Kentucky precedent similarly holds that a new plaintiff may not rescue, or benefit from, a complaint filed by a plaintiff who lacked the legal capacity to seek relief.

In *Vassill's Adm'r v. Scarsella*, 292 Ky. 153, 166 S.W.2d 64 (1942), a father who resided in Ohio filed an action in Kentucky based on his daughter's death in a Kentucky motor vehicle accident. Under then-prevailing law, the father "had no right in law to maintain" the action because he had not been qualified as the daughter's personal representative in Kentucky. *Id.* at 66.

Specifically, the court held that the later filing of a complaint by a duly qualified plaintiff, albeit after the expiration of the statute of limitations, "could not be considered as an amendment to the alleged pleading of one who had no right to file it" and "such practice will not be given the effect of prolonging the period of limitations against the maintaining of the action by the giving of any saving effect to the filing of the original action by one then having no legal authority to file it." *Id.* at 66-67. Thus, the court held that it would:

> deny the right of an interpleader to give his pleading a retroactive effect so as to consider it as reaching back and commencing at the time of the filing of the original action in which he seeks belated appearance for the assertion of some right which he may enforce in the litigation.

*Id.* at 67. In short, the father's complaint "possess[ed] no legal effect whatever," and so it did not "have the effect to preserve the right of action in favor of some

future qualified person to maintain it . . . ." *Id.* at 66. *See also, e.g., Lair v. Johnson*, 313 S.W.2d 272 (Ky. 1958).[14]

The dated, stilted language of *Scarsella* hampers its modern readability. Its core facts also are distinguishable from those at hand. However, the takeaway legal principle we must derive from *Scarsella* (and *Lair*) is plain: a complaint filed by a person lacking the legal authority to file it is a nullity, and a later complaint filed by a proper plaintiff cannot relate back to a nullity. In other words, the complaint filed by the *Mayberry* plaintiffs had "no legal effect whatever" and did not "have the effect to preserve the right of action in favor of some future qualified person to maintain it . . . ." *Scarsella*, 166 S.W.2d at 66.

The complaint filed by the *Mayberry* plaintiffs was, effectively, a legal nullity because they lacked constitutional standing. Consequently, we must disagree with the Commonwealth's argument that its complaint may be "saved" by, or relate back to, the *Mayberry* plaintiffs' complaint via KRS 413.270. Instead, the Commonwealth's complaint itself must be independently timely because it cannot stand in the temporal shoes of the *Mayberry* complaint.[15]

---

[14] Because published Kentucky precedent adequately resolves this issue, we decline to address the unpublished Kentucky precedent or federal court decisions cited by the parties.

[15] We thus do not need to address the parties' related arguments, such as whether the Attorney General qualifies as a representative of the *Mayberry* plaintiffs under KRS 413.270 or whether the *Mayberry* complaint was itself untimely.

**Application of Statutes of Limitation**

We must now apply the appropriate statute of limitations to determine whether the trial court properly dismissed each of the Commonwealth's claims against each appellee as being time-barred. Of course, in so doing we must construe the complaint in the light most favorable to the Commonwealth and accept as true the complaint's factual assertions, *Fox*, 317 S.W.3d at 7, such that dismissal is improper unless it is "apparent to a certainty" that the Commonwealth cannot possibly prevail on a claim. *Seiller Waterman, LLC*, 610 S.W.3d at 195 (internal quotation marks and citation omitted).

However, we shall limit our analysis to whether the complaint is timely and will not address arguments raised by CavMac or RVK which more properly are geared towards the merits of the Commonwealth's allegations. The trial court's decision was entirely based on timeliness grounds. Generally, we decline to address issues which a party may have raised to a trial court, but which formed no basis for the trial court's decision. *See, e.g.*, *Commonwealth v. Maricle*, 15 S.W.3d 376, 380 (Ky. 2000) (declining to resolve "issues raised, but not decided by the trial court").

As a final prefatory matter, CR 8.01(1) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." CR 8.05(1) provides that "[e]ach averment of a pleading shall be

simple, concise, and direct." This complaint is not short, plain, simple, concise, or direct. The complaint is 126 substantive pages long—Count I begins on page 114. An illustrative example of the complaint's excess verbosity is that pages 77-82 of the complaint contain a lengthy digression into the history of public pensions in the United States, including a chart of the purported funding status of numerous non-Kentucky public pensions.

We are acutely aware that this is not a routine case. Nonetheless, the Commonwealth's complaint facially violates CR 8.01 and 8.05. *See, e.g.*, *Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 241 (Ky. 2020) ("We refuse to mandate a heightened pleading standard and, therefore, **reiterate Kentucky's requirement of bare-bones, notice pleading**.") (emphasis added).

A trial court has the discretion to take steps to require a party to comply with Kentucky's bare bones pleading requirements. Nonetheless, we decline to definitively opine whether any corrective measures should be imposed here as neither appellee has asked us to do so, and the trial court did not base its decision on the complaint's facial noncompliance with CR 8.01 and 8.05.

### 1. Conspiracy

The Commonwealth asserts on page 21 of its opening brief that its "conspiracy claim accrued in 2017." CavMac and RVK assert the claim accrued sooner. However, we need not resolve that disagreement because the claim is

untimely even if we accept (for purposes of argument) the Commonwealth's more recent accrual date.

The statute of limitations for conspiracy is one year. *See* KRS 413.140(1)(c). The Commonwealth initially sought relief in 2020, and its complaint does not relate back to the filing of the complaint in *Mayberry*. The complaint does not mention any alleged conspiratorial acts taken in the year which immediately preceded the date upon which the Commonwealth filed its initial complaint. Thus, it appears "to a certainty" that the Commonwealth's conspiracy claim is untimely. *Seiller Waterman, LLC*, 610 S.W.3d at 195 (internal quotation marks and citation omitted). We affirm the dismissal of the civil conspiracy claim against CavMac and RVK.

### 2. Aiding and Abetting Breach of Trust

### a. RVK

RVK alleges on page 19 of its brief that all the claims against it are based on events which occurred no later than 2015. RVK also maintains that "any secrets regarding [Retirement's] financial troubles . . . were exposed in April 2010 when RVK publicly delivered asset-liability studies to [Retirement] and the legislature." *Id.* But we must accept as true the allegations in the complaint when resolving a motion to dismiss and construe the complaint in the light most favorable to the Commonwealth. *Fox*, 317 S.W.3d at 7. The Commonwealth

admits that the dire funding status of Retirement was generally known on or around 2010, but that CavMac and RVK (and others) nonetheless concealed the true extent of the funding crisis for several years thereafter.

Hence, paragraph 121 of the Commonwealth's complaint alleged the RVK appellees "reviewed and were aware of the contents of the . . . Annual Reports [issued by Retirement] and knew that the information therein was incomplete, false, and misleading [and] that they had a duty to correct these statements." R. at 714. Paragraph 219 of the Commonwealth's complaint alleges that "[e]ach of RVK's reports in the 2012, 2013, 2014 and 2015 [Retirement] Annual Reports . . . continued to falsely reassure [Retirement] beneficiaries, the Commonwealth, and taxpayers . . . ." R. at 766.

Thus, construing the complaint in the light most favorable to the Commonwealth and accepting as true its factual assertions, the aiding and abetting breach of trust claims against RVK were not facially untimely since the claims are based on alleged misconduct which occurred, in whole or in part, within the ten years which immediately preceded the 2020 filing of the Commonwealth's complaint. Because it consequently does not appear "to a certainty" that the Commonwealth's aiding and abetting breach of trust claim against RVK was untimely, *Seiller Waterman, LLC*, 610 S.W.3d at 195 (internal quotation marks and

citation omitted), we reverse the trial court's dismissal of the aiding and abetting breach of trust claim against RVK.[16]

### b. CavMac

The same basic analysis applies to the claim against CavMac. Paragraph 128 of the Commonwealth's complaint alleged in pertinent part:

> Cavanaugh Macdonald reviewed and were aware of the contents of the [Retirement] Annual Reports and knew that the information therein was incomplete, false and misleading. They also knew if the true nature and risks of the false actuarial assumptions and estimates were disclosed in the . . . Annual Reports, [Retirement's] publicly reported funding deficit would have skyrocketed, an uproar would follow, investigations could have ensued, and they could have been terminated . . . . Allowing the deception to continue served the economic interest of Cavanaugh Macdonald who chose inaction to benefit their own economic self-interest.

R. at 716. Paragraph 221 of the complaint asserts Retirement's annual reports from 2011 to 2015 contained a certification from CavMac that the reports were actuarially correct. Combining those two portions of the complaint shows that the Commonwealth alleged that between 2011 and 2015, CavMac knowingly, falsely asserted that the annual reports issued by Retirement were proper.

---

[16] Discovery will likely conclusively show what allegedly improper acts or omissions, if any, by CavMac or RVK occurred outside the relevant limitations period for this claim (and the other viable claims). This Opinion does not preclude any party from later seeking, or receiving, relief for any claims which discovery shows to be untimely or otherwise legally infirm.

Thus, construing the complaint in the light most favorable to the Commonwealth, the aiding and abetting breach of trust claim against CavMac is based on acts or omissions which occurred within the ten years which immediately preceded the Commonwealth filing its initial complaint. So, this claim against CavMac is not time barred "to a certainty . . . ." *Seiller Waterman, LLC*, 610 S.W.3d at 195 (internal quotation marks and citation omitted). We reverse the trial court's dismissal of the aiding and abetting breach of trust claim against CavMac.

### 3. Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty

These claims are subject to a five-year limitations period, which is not subject to the discovery rule. *Middleton*, 522 S.W.3d at 878-79; *Ferrill*, 671 S.W.3d at 346; *Anderson*, 177 F. Supp. 2d at 604. It is not easy to discern from the face of the complaint (and the Commonwealth's brief) specific allegations of fiduciary duty-related misconduct against RVK or CavMac which occurred in the five years immediately preceding the 2020 filing of the Commonwealth's complaint.[17]

---

[17] On page six of its opening brief, the Commonwealth alleges that its complaint "is replete with allegations that the damage to [Retirement] continued into the 2017 calendar year." The Commonwealth cites paragraphs 23, 28, 193, 224-226, and 234 to support that assertion. Of course, the question is not whether Retirement was damaged into 2017; the question before us is whether the complaint sufficiently alleges that RVK or CavMac damaged Retirement within the relevant limitations period.

Moreover, the paragraphs cited by the Commonwealth do not specifically allege acts or omissions by CavMac or RVK which occurred "into the 2017 calendar year." First, paragraph

The sections of the Commonwealth's complaint setting forth these claims (Count II, paragraphs 242 to 247 for breach of fiduciary duty and Count IV, paragraphs 262 to 270 for aiding and abetting breach of fiduciary duty) do not specify **_any_** date(s) when the alleged misconduct occurred. Paragraph 242 merely incorporates by reference the prior allegations in the complaint. Paragraph 243 alleges that CavMac and RVK (and other named defendants who are not parties to this appeal) had a fiduciary relationship with Retirement.[18] Paragraph 244 alleges

23 involves statements made in 2017 by elected officials in Kentucky regarding the funding status of Retirement. Neither CavMac nor RVK is mentioned in that paragraph. Second, paragraph 28 involves an allegation that the 2017 financial status of Retirement required it to need additional taxpayer funds. Again, neither CavMac nor RVK is mentioned in that paragraph. Third, paragraph 193 states that an investigative report issued by a non-party to this case in 2017 showed the hedge funds into which Retirement invested had not performed well. Yet again, neither CavMac nor RVK is mentioned in that paragraph. Fourth, paragraphs 224 and 225 are excerpts from newspaper articles about Retirement's funding deficit. Once again, neither CavMac nor RVK are mentioned in those paragraphs. Paragraph 226 discusses a 2017 media story about a report issued by a nonparty regarding Retirement's financial woes. As before, neither CavMac nor RVK are mentioned in that paragraph.

Fifth, the only mention of 2017 in paragraph 234 is an assertion that "[t]he 2016-2017 revelations of the true extent and nature of [Retirement's] financial losses, and the consequences of the misleading and false actuarial assumptions, now confront the Commonwealth with a financial crisis of many billions of dollars." R. at 772. That paragraph does not refer to RVK but obliquely refers to CavMac via the alleged "false actuarial assumptions . . . ." However, the paragraph does not specify what specific, allegedly improper acts or omissions CavMac took in 2016 or 2017; instead, the paragraph discusses the "revelations" regarding Retirement's financial status which occurred in those years. The thrust of the lengthy paragraph is the allegation that Retirement's financial status would have improved more rapidly if Retirement's "Trustees (and those working in concert with them) had told the truth in 2010 . . . ." R. at 772.

The takeaway is that the complaint is not "replete" with specific factual allegations against CavMac or RVK going "into the 2017 calendar year."

[18] We decline to address further CavMac's argument that it did not have a fiduciary relationship with Retirement. CavMac does not cite authority showing that an actuary can never have a fiduciary relationship with a client. We note that our research revealed that misconduct

-28-

each defendant breached its duties towards Retirement. Paragraph 245 alleges the Commonwealth sustained damages. Paragraph 246 alleges Defendants' conduct was a substantial factor in causing those damages. Paragraph 247 alleges Defendants are liable to the Commonwealth for its damages.

As to Count IV, Paragraph 262 incorporates by reference the complaint's previous allegations. Paragraph 263 alleges CavMac and RVK (along with other defendants) knew Retirement's trustees owed fiduciary duties to Retirement, and Paragraph 264 alleges CavMac and RVK (and others) knew the

<hr>

allegations against an investment advisor were deemed sufficient to survive a motion to dismiss, albeit in a nonbinding, unpublished opinion issued by a federal trial court in Kentucky, which we cite only as an illustrative example of the potential fiduciary relationship between a person giving financial advice and the investor. *McNally v. Kingdom Tr. Company*, No. 5:21-CV-0068 (TBR), 2022 WL 248094, at \*9 (W.D. Ky. Jan. 25, 2022) (unpublished). The complaint alleges the existence of a fiduciary relationship, and we must construe the complaint in the light most favorable to the Commonwealth.

CavMac also asserts that it "was not in a position to exercise undue influence." CavMac Brief, p. 27. That assertion is aimed at the merits of the Commonwealth's claims and involves factual allegations regarding the nature and extent of CavMac's relationship with Retirement and its employees, and the reliance those persons placed on CavMac. At this stage, we construe the complaint in the light most favorable to the Commonwealth and, moreover, the trial court did not rule on this issue. Generally, we decline to "address issues raised, but not decided by the trial court." *Maricle*, 15 S.W.3d at 380.

It is not apparent to a certainty that the Commonwealth will be unable to show that CavMac had a fiduciary relationship with Retirement and/or that CavMac exercised undue influence. Moreover, the Commonwealth did not facially bring fraud claims, so we decline to delve into CavMac's argument that the Commonwealth's complaint does not satisfy the heightened pleading standard in CR 9.02 for fraud claims.

We reiterate that our task is to determine whether the claims at issue are plainly time-barred to a certainty since that was the entire basis for the trial court's dismissal order. Any arguments beyond that narrow scope may be addressed at the appropriate time on remand.

trustees and other defendants had breached those duties via "conduct as alleged in this Complaint . . . ." R. at 782. Paragraph 265 alleges CavMac and RVK (and others) "gave Trustees and/or other Defendants substantial assistance or encouragement in effectuating [their] . . . breach of their fiduciary duties . . . ." R. at 782-83. Paragraph 266 alleges "[t]he overt acts of Defendants that constitute substantial knowing assistance are the same overt acts alleged as part of Defendants' participation in the . . . civil conspiracy" claim found in Count III. R. at 783. Paragraph 267 alleges the conspiring defendants "provided substantial assistance to Trustees and Officer Defendants in the breaches of their fiduciary duties" to Retirement. *Id.* Paragraphs 268-270 allege the Commonwealth sustained damages for which the defendants named in that count are liable.

Thus, even though we have already determined that the trial court properly dismissed the conspiracy claim as being untimely, Paragraph 266's reliance on the allegations in the conspiracy claim means we must examine the contents of the conspiracy count to determine if there are allegations of misconduct which fall within the five-year statute of limitations.

Again, however, the conspiracy count of the complaint (Count III, paragraphs 248-270) contains few specific dates regarding alleged misconduct by RVK or CavMac. The only specific dates mentioned in Count III are losses incurred by Retirement in 2001-2002 and 2008-2009 (paragraph 251) and an

alleged failure by the conspirators, which included CavMac and RVK, to tell the whole truth about the dire financial status of Retirement in 2010-2011 (paragraph 252). None of those dates are within the five-year limitations period.

Paragraph 256 of the complaint asserts that the "[a]ctuarial defendants" (CavMac) "reviewed and were aware of the contents of [Retirement's] Annual Reports and knew that the information therein regarding the actuarial assumptions and liabilities and investment returns was incomplete, inaccurate and false and misleading" but the CavMac defendants "let the deception continue because it served their selfish economic purposes to do so." R. at 780. The allegations against RVK in paragraph 257 of the complaint are extremely similar. Neither paragraph refers to specific dates when the alleged misconduct occurred.

However, paragraph 248 (the first in the conspiracy count) incorporates by reference the allegations in the remainder of the complaint. Paragraph 213 of the complaint alleges that the annual reports from 2010-2016 prepared by Retirement contained "false and misleading statements . . . ." R. at 763. Paragraph 219 alleges that RVK's statements in the 2012-2015 annual reports "continued to falsely reassure . . . beneficiaries, the Commonwealth, and taxpayers . . . ." R. at 766. Paragraph 221 asserts that CavMac certified that the annual reports from 2011 to 2015 described Retirement's actuarial condition.

Thus, albeit in an extremely circuitous fashion, in the light most favorable to the Commonwealth and accepting its factual allegations as true, it is not certain that the Commonwealth's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims are completely time-barred. Though most of the alleged improprieties purportedly occurred more than five years before the Commonwealth sought relief, the complaint contains at least some allegations of impropriety which occurred within those five years. Therefore, we must reverse the trial court's complete dismissal of the Commonwealth's breach of fiduciary duty claims and the aiding and abetting breach of fiduciary duty claims against both CavMac and RVK. On remand, discovery will show which, if any, acts or omissions allegedly taken by CavMac and RVK occurred in the five-year limitations period.[19] Any portion of the Commonwealth's claims based on conduct which occurred outside the limitations period is not viable.

## CONCLUSION

For the foregoing reasons, the Franklin Circuit Court's dismissal of the civil conspiracy claim against all Appellees is affirmed. The Franklin Circuit

---

[19] Our review of the record shows that Paragraph 118 of the Complaint asserts that appellee "Jim Voytko was the President and Principal of RVK until 2012." R. at 713. RVK's brief does not specifically address whether Voytko maintained a different role with RVK after 2012. Of course, 2012 is outside the five-year limitations period. On remand, the claims against Voytko which are subject to a five-year limitations period may be dismissed upon presentation of appropriate, sufficient proof that he did not take (or fail to take) any relevant acts within the limitations period.

Court's dismissal of the aiding and abetting breach of trust, breach of fiduciary duties, and aiding and abetting breach of fiduciary duty claims is reversed as to all Appellees. Those claims are remanded with instructions for the trial court to issue an order reinstating them. We reiterate that all parties retain the right to, at the appropriate time, seek relief on any basis which is not contrary to our conclusions herein.

ALL CONCUR.

BRIEFS FOR APPELLANT:

John H. Heyburn
Principal Deputy Solicitor General
Frankfort, Kentucky

BRIEF FOR APPELLEES R.V. KUHNS & ASSOCIATES, INC., JIM VOYTKO, AND REBECCA GRATSINGER:

Thad M. Barnes
Jeffrey S. Moad
Zachary D. Losey
Louisville, Kentucky

Robin E. McGuffin
Lexington, Kentucky

BRIEF FOR APPELLEES CAVANAUGH MACDONALD CONSULTING, LLC, THOMAS CAVANAUGH, TODD GREEN, AND ALISA BENNETT:

Charles E. English, Jr.
E. Kenly Ames
Bowling Green, Kentucky

Steven G. Hall
Kristin S. Tucker
Atlanta, Georgia